## Case No. 4,509.

### ERDHOUSE v. HICKENLOOPER.

[2 Bond, 392.][1]

Circuit Court, S. D. Ohio. Oct. Term, 1870.

W. B. Caldwell, for plaintiff.
W. M. Bateman, for defendant.

OPINION OF THE COURT. This case was originally brought in the superior court of Cincinnati, and removed to this court under an act of congress authorizing such removal. The plaintiff. has filed a declaration in replevin, claiming title to certain specified chattel property. The case is submitted to the court, the parties waiving the intervention of a jury.

The defendant has filed pleas: 1. Denying the ownership of the plaintiff in the property. 2. Setting forth specially that the United States had recovered judgment for between six and seven hundred dollars against one John Sackstader, for a violation of the internal revenue laws of the United States, upon which an execution issued directed to the defendant Hickenlooper, as the marshal of the United States for the southern district of Ohio, in virtue of which, on August

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

4, 1870, he levied on the chattels described in the declaration as the property of said Sackstader, and holds the same to satisfy the execution. Issue is taken on these pleas, presenting the question, who is the legal owner of the property?

As the court is called on to pass upon the case, it will be proper briefly to notice the material facts in evidence. It is proved that prior to April 14, 1870, the said Sackstader and one Heidrick were copartners, at Cincinnati, in the business of dealing in and the exchange of sewing machines, and some other things connected with these operations. On May 4, 1870, one Otis Hiddon purchased the interest of Heidrick, and became the partner of Sackstader on terms not necessary to be stated. On the 14th of May, Sackstader, by a written article of agreement, for the consideration of $2,000, sold and transferred to Hiddon all the property in question, agreeing to employ Sackstader to aid him in the prosecution of the business. It is in evidence that pursuant to this contract, actual possession of the property was delivered to Hiddon, and that he thereby became the sole owner. It is also in evidence that on June 2, 1870, Hiddon, on account of some dissatisfaction with the management by Sackstader, for the sum of $2,000, named in the bill of sale, sold his entire interest in the concern to the plaintiff, Erdhouse, who paid $1,500 of the purchase money and took full possession, and held it as owner until the 4th of August following, when it was seized by the marshal as the property of Sackstader. By an agreement between Sackstader and the plaintiff, the former was permitted to retain possession of the concern, the plaintiff Erdhouse agreeing he should have all the profits made while the arrangement continued. It appears, also, that some time after the sale by Hiddon to the plaintiff, a verbal agreement was entered into between him and Sackstader to sell the concern to the latter, provided the plaintiff should be satisfied with a mortgage on certain real estate in the west, which Sackstader proposed to give him as security for the payment of the purchase money. It is in evidence that this mortgage was not satisfactory to the plaintiff, and that the sale to Sackstader was not perfected.

These are the material facts in the case, and they lead satisfactorily to the establishment of the conclusions: 1. That Hiddon was a bona fide purchaser of the property from Sackstader. 2. That Hiddon sold to the plaintiff for a fair and full consideration, and delivered possession to him. 3. That the plaintiff did not part with his title, which was vested in him at the time of the levy by the marshal. These propositions are not only sustained by the explicit and credible evidence of the plaintiff and Hiddon, but by proof of declarations by Sackstader that the plaintiff was the owner of the property, made at different times to different persons, who have testified as witnesses in the case. It is claimed, however, by the counsel for the defendant, that the sale to Erdhouse was fraudulent, and that Sackstader had an interest in the property, which subjected it to levy to satisfy the execution against him. The only ground which could sustain the allegation of fraud, as against the plaintiff Erdhouse, would be evidence of the fact that in becoming the apparent owner of the property, he was acting in collusion with Sackstader to shield the property from execution at the suit of the United States. But the proof is, by Hiddon, as well as Erdhouse, that neither had any knowledge of the existence of the judgment against Sackstader, or that he was otherwise embarrassed, until the time when the property was levied on by the marshal. This seems to negative any inference of fraud on the part of the plaintiff. The possession of the establishment after the sale to Erdhouse by Sackstader, is explained without the necessity of supposing fraud. It was legally the possession of Erdhouse, and Sackstader was in possession by permission of and under the authority of the plaintiff, by a special agreement for that purpose. Judgment will be entered for the plaintiff.